# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALEXZANDER HOUSTON,**

    **Plaintiff,**

**v.**                                                              Case No: 6:18-cv-708-Orl-31DCI

**NICHOLAS GALLUZZI and NICHOLAS HOLBROOK,**

    **Defendants.**

## ORDER

This matter comes before the Court without a hearing on the Motion to Dismiss Count II (Doc. 50) filed by Defendant Nicholas Galluzzi (henceforth, "Galluzzi") and the response in opposition (Doc. 57) filed by the Plaintiff, Alexzander Houston ("Houston").

### I. Background

According to the allegations of the Third Amended Complaint (Doc. 48), which are accepted in pertinent part as true for purposes of resolving the instant motion, on December 1, 2016, Houston was a passenger in a vehicle that was attempting to evade police officers. (Doc. 48 at 2). The vehicle crashed, the driver fled, and Houston immediately surrendered to the officers present at the crash scene. (Doc. 48 at 3). Those officers included Defendants Galluzzi and Nicholas Holbrook ("Holbrook"), both of whom work for the Rockledge Police Department. (Doc. 48 at 2). Houston exited the vehicle and lay face down on the ground. (Doc. 48 at 3). After remaining in that position for at least five seconds, without offering any provocation, Houston was shot in the shoulder by Galluzzi, with the bullet ultimately lodging in his chest. (Doc. 48 at 3).

Galluzzi waited at least 30 seconds after the shooting to order Holbrook to render medical aid to Houston. (Doc. 48 at 4). Holbrook put on gloves and began searching Houston; however, neither he nor Galluzzi attempted to render medical aid to Houston. (Doc. 48 at 5). At least three minutes passed after the shooting before Galluzzi called for an ambulance. (Doc. 48 at 6).

On May 8, 2018, Houston filed the instant suit pursuant to 42 U.S.C. § 1983, asserting claims against Galluzzi and five "John Doe" defendants. (Doc. 1). On July 20, 2018, Houston filed an amended complaint (Doc. 20), naming the same defendants. On October 26, 2018, the Court granted in part Galluzzi's motion to dismiss. (Doc. 29). On December 10, Houston filed his Second Amended Complaint (Doc. 30). Among other changes, Houston added Holbrook as a defendant, alleging that he (along with Galluzzi) had been deliberately indifferent to Houston's medical needs. (Doc. 30 at 7-10). On February 26, 2019, the Court dismissed the deliberate indifference claims. (Doc. 45, 46).

On March 12, 2019, Houston filed the Third Amended Complaint. In it, he asserts two Section 1983 claims: an excessive force claim against Galluzzi (Count I) and another deliberate indifference claim against both Defendants (Count II). By way of the instant motion, Galluzzi seeks dismissal of Count II on the basis of qualified immunity.

**II.     Legal Standard**

"Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place." *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). Qualified immunity protects from suit "all but the plainly incompetent or one who is

knowingly violating the federal law." *Id.* (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)).

To be entitled to qualified immunity, government officials must first prove that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir. 1997). Once the officials do so, the burden shifts to the plaintiff to establish that 1) the facts alleged make out a violation of a statutory or constitutional right and 2) the right at issue was clearly established at the time the alleged violation took place. *Gilmore*, 738 F.3d at 272. The Court may consider these two prongs in either order, and a public official is entitled to qualified immunity if the plaintiff fails to establish either one. *See Pearson v. Callahan*, 555 U.S. 223, 226, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

### III. Analysis

In the instant case, there is no dispute that Galluzzi and Holbrook were acting within the scope of their discretionary authority during the events in question. Accordingly, the burden shifts to Houston to show that (1) he has alleged facts that, if shown to be true, would make out a violation of a constitutional right and (2) this right was clearly established at the time of the alleged violation.

As a pretrial detainee, Houston's right to adequate medical care is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's prohibition on cruel and unusual punishment, which applies to prisoners. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1306 (11th Cir. 2009) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L.Ed.2d 605 (1983)). Nonetheless, Houston's claim is subject to the same scrutiny as if it had been brought under the Eighth Amendment. *Id.* (citing *Hamm v.*

*DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985)). To prevail on a claim of deliberate indifference to serious medical need in violation of the Fourteenth Amendment, a plaintiff must demonstrate: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury. *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). In this case, the Defendants acknowledge that Houston had a serious medical need but argue that they were not deliberately indifferent to that need.

Within this Circuit, to prove that a deputy acted with deliberate indifference, a plaintiff must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). A government official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe Cty., Ala.*, 116 F.3d 1419, 1425 (11th Cir. 1997), *overruled on other grounds by LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a government official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. *See Harris v. Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994) (citing *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).

In his Third Amended Complaint, Houston makes the following allegations regarding delays in the treatment of his gunshot wound: He alleges that "Galluzzi waited at least 30 seconds [after the shooting] before ordering Holbrook to 'render aid' to Plaintiff." (Doc. 48 at 4). Holbrook, despite knowing that Houston had been shot and seeing a "big pile of blood" on him, did not render aid; instead, Holbrook only donned gloves and searched Houston.[1] (Doc. 48 at 4-

---

[1] As the Court noted in a previous order dismissing Houston's failure to provide medical

- 4 -

6).  Galluzzi saw that Holbrook was not providing aid to Houston but did not do so himself, opting instead to search the vehicle in which Houston had been riding.  (Doc. 46 at 5).  Galluzzi eventually summoned an ambulance, but he did not make the call "until more than three minutes" after the shooting.  (Doc. 46 at 6).

To determine, in a Section 1983 case, whether a right was clearly established, trial courts in this Circuit look to binding decisions of the Supreme Court of the United States, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the relevant state – in this case, Florida.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).  In the light of these decisions, the court asks "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001), receded from on other grounds, *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

> While officials must have fair warning that their acts are unconstitutional, there need not be a case "on all fours," with materially identical facts, before we will allow suits against them. A principle of constitutional law can be "clearly established" even if there are "notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights."

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1277 (11th Cir. 2004) (quoting *United States v. Lanier*, 520 U.S. 259, 269, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).  Nevertheless, officers are not required to be "creative or imaginative in drawing analogies from previously decided cases."  *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002) (internal quotation

---

care claim without prejudice, there is no case law establishing that apprehending officers are *themselves* obligated to render medical aid, such that their failure to do so could constitute deliberate indifference.  (Doc. 46 at 4).

marks omitted). The salient question is whether the state of the law gave police officers fair warning that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002).

Galluzzi argues that there is no case law suggesting that an apprehending officer commits a constitutional violation by acting the way he is alleged to have acted here – *i.e.*, by ordering another officer to provide aid 30 or so seconds after a shooting, by not providing aid himself when the other officer failed to do so, and, at some point more than three minutes after the shooting, summoning an ambulance. Houston disputes this, calling Galluzzi's having waited for "more than three minutes" prior to summoning medical help "an insufficient response." (Doc. 57 at 5). But the only case he cites – *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015) – does not support this argument.

In that case, which was decided at the summary judgment stage, a police officer named Rousseau, apparently without provocation, shot Valderrama in the groin and thigh during the course of an arrest. *Id.* at 1110. Rousseau then spoke with a second officer, Smith, who waited three and a half minutes before calling for an ambulance; in making the call, Smith reported Valderrama had suffered a "laceration" rather than a gunshot wound. *Id.* at 1110-11. An ambulance arrived 11 minutes later. *Id.* at 1111.

Smith's misreporting of the severity of Valderrama's injuries resulted in the call being given the lowest possible priority by the dispatcher; if the injuries had been accurately described, the dispatcher would have given the call the highest possible priority, and the ambulance would have arrived within 4 minutes. *Id.* at 1111, 1118. Neither officer provided an explanation for the initial delay in summoning help or for the false report as to the severity of the injuries. *Id.* at 1117-18. There was also testimony from another arrestee that Rousseau offered to drop drug

charges against him if he would say Valderrama had a metallic object in his hand when he was shot. *Id.* at 1119. Department protocol obligated Rousseau to immediately remove himself from the scene after a shooting, but he instead used the delay in the arrival of the ambulance to search Valderrama's car. *Id.* at 1118-19.

The Eleventh Circuit found that a jury, based on this evidence, could infer that the officers purposefully delayed the arrival of the ambulance to give themselves more time to come up with a story that would justify Rousseau's use of deadly force. *Id.* at 1118. Such a delay would obviously constitute disregard of a serious risk of harm to Valderrama. *Id.* Given this possibility, the court found that Rousseau and Smith were not entitled to qualified immunity *Id.* at 1118.

Even when viewed in the light most favorable to the Plaintiff, the allegations in this case fall well short of the allegations at issue in *Valderrama*. Houston does not explain exactly when the Defendants should have summoned medical help, but in any event they did so around three minutes after the shooting. Most significantly, however much "delay" there might have been prior to the call, there are no allegations that the delay was intentional or done for some nefarious purpose. The steps allegedly taken by the officers prior to calling for an ambulance – searching the vehicle, and Houston's person – are facially reasonable, and Houston cites no case law, department policy or anything of that nature suggesting otherwise. As such, the Court finds that Galluzzi and Holbrook are entitled to qualified immunity, and Houston's deliberate indifference claim will be dismissed with prejudice.

**IV. Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Count II filed by Defendant Nicholas Galluzzi (Doc. 50) is **GRANTED,** and Count II is **DISMISSED WITH PREJUDICE** as to Defendant Galluzzi, only.[2]

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 14, 2019.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[2] Although it appears that this analysis would also apply to Holbrook, no motion to dismiss was made on his behalf.